UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ROBERT D. SANGO,

        Plaintiff,                    Case No. 2:15-cv-100

v.                                            Honorable Gordon J. Quist

UNKNOWN BASTIAN, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kevin Burns and Unknown Joyals. The Court will serve the complaint against Defendant Unknown Bastian.

## Discussion

    I.    <u>Factual allegations</u>

Plaintiff Robert D. Sango, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against

Defendants Corrections Officer Unknown Bastian, Corrections Officer Kevin Burns, and Corrections Officer Unknown Joyals. In Plaintiff's complaint, he alleges that upon arriving at AMF, he received a letter from Defendant Burns, stating that Plaintiff would not live to see September and that he would definitely not survive until his outdate. A couple of days later, Plaintiff became very sick, suffered from diarrhea and vomiting, and noticed that his skin was "turning orangish green." Plaintiff then asked Corrections Officer Dubb if he could see the nurse. Shortly thereafter, Defendant Bastian came to Plaintiff's cell and told him that Food Service had been putting flour in his soy milk. Plaintiff filed a grievance and Food Service responded that they did not have any flour in the kitchen and that all of the food comes pre-prepared. In addition, health services told Plaintiff that flour in any quantity would not make him that sick. A week or so later, Defendant Bastian told prisoner Oliver #381382 that he had poisoned Plaintiff.

Plaintiff states that after that date, Defendant Bastian repeatedly tried to pick a fight with Plaintiff, threatening him and getting in his face when he came out of his cell for a shower. Plaintiff stopped coming out of his cell for a shower because of the harassment. Plaintiff asked health services for a thorough examination and was told that his condition was caused by bacteria that he must have swallowed from his own skin. Plaintiff asserts that many prisoners die at AMF and that staff in segregation strive to find creative ways to kill them. Plaintiff was told to let the issue go, and when Plaintiff continued to pursue his complaints against Defendant Bastian, he was released to the general population. Plaintiff alleges that one of Defendant Bastian's friends from segregation began to work overtime on Plaintiff's general population unit and recruited officers to target Plaintiff. One of these officers was Defendant Joyals.

Plaintiff states that Defendant Joyals had previously allowed prisoners to give Plaintiff extra food that they did not want. One day, Corrections Officer Rozine allowed the kitchen worker to give Plaintiff extra vegetables because no one wanted them. This was caught on camera. Defendant Joyals ran from the base onto the wing and wrote Plaintiff a misconduct ticket for

violating a Kosher diet, despite the fact that Plaintiff is not on a Kosher diet and is Buddhist. Plaintiff states that extra vegetables did not violate the tenets of his religion. Plaintiff was found guilty of the misconduct by one of Defendant Joyals' friends.

Plaintiff further alleges that when Defendant Bastian came to Plaintiff's unit, he rallied the officers in an intense campaign against Plaintiff. As a result, Plaintiff's food trays came late, were already opened, and had food missing. Plaintiff states that on one occasion, he discovered a thumb tack in his potato salad after he bit on it and had to pull it out of his gums. Kitchen workers told Plaintiff that they observed Defendant Bastian "messing with" his trays on a daily basis, but were afraid to say anything because they feared becoming a target for the same harassment.

Plaintiff sues Defendants in their individual and official capacities and seeks both damages and equitable relief.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Burns sent him a threatening letter, telling Plaintiff that he would not live long enough to serve his prison sentence. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional

rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Burns arising from his threatening letter.

Plaintiff claims that Defendant Joyals wrote a false misconduct ticket on Plaintiff in violation of his due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the leading case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather, the right to process arises only when the prisoner faces a loss of liberty in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff alleges that he "could lose good time" and disciplinary credits as a result of his misconduct conviction. However, Plaintiff committed the crime for which he is currently

serving a sentence on May 2, 1996. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=252200. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in significant, atypical deprivations. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his misconduct conviction. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Finally, the court notes that a finding of guilt in a major misconduct proceeding has preclusive

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

effect against claims dependent on the same issues of fact. *See Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). Therefore, Defendant Burns is properly dismissed from this action.

Plaintiff claims that Defendant Bastian placed some sort of poison in his food, which caused him to become extremely ill. Plaintiff states that Defendant Bastian actually told another prisoner that he had poisoned Plaintiff. If true, such conduct violates the Eighth Amendment. Therefore, Plaintiff's claims against Defendant Bastian are not properly dismissed upon initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burns and Joyals will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Bastian.

An Order consistent with this Opinion will be entered.


Dated: September 29, 2015              /s/ Gordon J. Quist
                                       GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE